UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**JOHN DOE**                                                                      **PLAINTIFF**

**V.**                                        **CASE NO. 5:23-CV-05084-TLB**

**KANAKUK HERITAGE, INC.;**
**KANAKUK MINISTRIES; and**
**JOE WHITE, individually**                                               **DEFENDANTS**

## COMPLAINT

COMES NOW the Plaintiff, by and through his undersigned attorney, Joshua D. Gillispie, and Laffey Bucci & Kent (pro hac vice applications forthcoming), and for his causes of action against these Defendants, states the following:

## PARTIES

1.     Plaintiff John Doe (hereinafter "Plaintiff") is an individual citizen and resident of Springdale, Arkansas, in Benton County.  Because Plaintiff was a minor at the time of the sexual abuse allegations described herein, he is being identified herein by pseudonym.  His full name will be made available to Defendants and can be filed in another pleading or document under seal with the Court as directed by the Court where necessary. To disclose his name publicly would potentially subject him to further harm.

2.     Defendant Kanakuk Heritage, Inc. (hereinafter "Kanakuk Heritage") is a Missouri corporation and is the surviving corporation and/or owner of all predecessor Kanakuk entities. At all times relevant to this Complaint, Kanakuk Heritage was not a church or a

religious organization. Kanakuk Heritage can be served through its registered agent: Joe White, 1353 Lake Shore Drive, Branson, Missouri 65616.

3.      Defendant Kanakuk Ministries is a Missouri non-profit corporation and is the surviving corporation and/or owner of all predecessor Kanakuk entities. At all times relevant to this Complaint, Kanakuk Ministries was not a church or a religious organization. Kanakuk Ministries can be served through its registered agent: John Jensen, 1353 Lake Shore Drive, Branson, Missouri 65616.

4.      Defendant Joe White is an individual resident and citizen of the state of Missouri. At all times relevant to this Complaint, Joe White served as President of Defendants Kanakuk Heritage and Kanakuk Ministries. Joe White can be served at 1353 Lake Shore Drive, Branson, Missouri 65616.

5.      Kanakuk Heritage, Kanakuk Ministries, and Joe White may be collectively referred to herein as the Kanakuk Defendants.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the causes of action asserted herein and over the parties to this action pursuant to 28 U.S.C. § 1332(a)(1), as there is diversity of citizenship and the amount in controversy exceeds $75,000.00.

7.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTS

8..     Plaintiff hereby incorporates by reference all previous paragraphs as if fully set forth herein.

9.      At all times relevant to this Petition, the Kanakuk Defendants owned and operated residence camps for children known as "Kanakuk Kamps" where children would come sleep and attend camp activities for periods of time ranging from one to three weeks.

10.     Kanakuk Kamps include, but are not limited to, K-1, K-2, and K-Kountry.

11.     In 1995, the Kanakuk Defendants hired and retained Peter Newman (hereinafter referred to as "Newman") in the position of counselor.

12.     At all times relevant to this Complaint,  N ewman was an employee of Defendants.

13.     From 1997 to 2005, William Cunningham (hereinafter "Cunningham") was Director of K-Kountry. *See* **Ex. A, Affidavit of William Cunningham.**

14.     During the same time period, Cunningham was the direct supervisor of N ewman.

*Id.*

15.     During the time Newman was a Kanakuk employee, he was a serial abuser and used his position at Kanakuk to sexually abuse numerous children.

16.     The Kanakuk Defendants structured Kanakuk Kamps so that Kamp staff, including Newman, would continue Kamp-sponsored and sanctioned communications with "kampers" after the "kampers" returned home from summer residential camp in Missouri.

17.     During Newman's employment, the Kanakuk Defendants encouraged, allowed, and controlled Newman's "extra kamp ministry," which consisted of Newman interacting with children and recruiting them to attend Kanakuk Kamps during sponsored events, such as small group Bible studies, lunches at children's schools, club activities, leadership activities, small group activities, para-Kamp activities, and other outdoor activities, among other things.

18.     The Kanakuk Defendants encouraged, allowed, and controlled Newman's "extra kamp" and "para kamp" activities, which consisted of off campus high school activities, off campus junior high activities, showing up at campers' homes, and off campus outdoor activities.

19.     In 1999, a camper's parent notified the Kanakuk Defendants that Newman had participated in activities with several young boys while nude, including swimming in the lake and four-wheeling. **Ex. A.**

20.     At that time, or just after, Cunningham, in his capacity as supervisor and employee, was told of the complaints against Newman. *Id*.

21.     The Kanakuk Defendants told Cunningham that Kanakuk leadership reported Newman's sexual misconduct to the Taney County District Attorney's office. *Id.*

22.     At that time, the Kanakuk Defendants knew, or should have known, that Newman was committing crimes of sexual misconduct and engaging in illegal behavior with children.

23.     On July 6, 2001, Cunningham sent Newman a letter warning him to stop sleeping alone with children.

24.     In 2003, the Kanakuk Defendants received new reports of Newman engaging in

sexual misconduct with children, including swimming and playing basketball nude with children at Defendants' K-2 property. **Ex. A.**

25.     That same year, a concerned parent suspected and reported Newman of exhibiting unusual/sexual behavior toward her son at a father-son retreat after witnessing her son throw away his jeans after the retreat and proclaim, "I never want to see Pete again."

26.     Due to the number of complaints regarding Newman's sexual misconduct with children, Cunningham reprimanded Newman and dismissed him from participating in the 2003 Summer Leadership Weekend. *Id.*

27.     The Kanakuk Defendants also reached out to the Smalley Center/Institute, a local provider of therapy, to discuss Newman's sexual misconduct with children and to set up a potential evaluation of Newman.

28.     Additionally, Cunningham recommended to the Kanakuk Defendants that Newman's employment be terminated. *Id.*

29.     The Kanakuk Defendants, and specifically Defendant White, were the only ones with the authority to terminate Newman's position. *Id.*

30.     Rather than terminating Newman, however, the Kanakuk Defendants allowed Newman to serve as Assistant Director at K-Kountry in 2003.

31.     In 2005, the Kanakuk Defendants promoted Newman to Director of K-Kountry.

32.     Then in 2006, an alarmed father contacted the Kanakuk Defendants, claiming Newman kept making late night calls and texts to his son.

Case 5:23-cv-05084-TLB   Document 2   Filed 05/30/23   Page 6 of 21 PageID #: 7

33.     Also in 2006, Defendant White learned that Newman was "ministering" to children in his hot tub on a nightly basis. Newman's wife also expressed concerns to Defendant White about this practice. Defendant White felt this was enough of a problem to issue a corrective action. The correction, however, was not to prohibit the hot tub encounters, but merely an encouragement to Newman to reassess the amount of time he was spending with his family.

34.     That same year, a female camper reported to her mother, after her K-Kountry term, that she witnessed Newman's inappropriate behavior with a boy camper. The mother reported this to the Kanakuk Defendants, who said they would investigate the matter. The Kanakuk Defendants later responded that they had looked into the incident and that the female camper who reported this incident wasn't athletic nor godly enough to be a fit for Kanakuk, and she should not return to camp.

35.     Newman remained in the position of Director of K-Kountry until 2009, when he confessed to crimes against children. In 2010, Newman received a double life sentence plus thirty years for sexually abusing Kanakuk attendees; his number of victims is believed to be in the hundreds.

36.     On information and belief, it is now known that the Kanakuk Defendants actively concealed the reports of Newman's sexual misconduct with minor children.  This active concealment occurred prior to Plaintiff's abuse.

37.     Plaintiff attended Kanakuk as child where he was introduced to Newman, groomed by Newman, and ultimately sexually abused by Newman from 2006 to 2009.

38.     The Kanakuk Defendants, prior to and during Newman's abuse of Plaintiff, actively concealed from Plaintiff its knowledge that Newman was a child molester.

39.     In 2006, which Plaintiff was 15, Newman sexually molested Plaintiff for the first time while on a Kanakuk father/son caving trip in Arkansas, in caves near Eureka Springs, Arkansas.  Newman fondled Plaintiff's genitals and buttocks in the cave.  Later that night, back in Lampe, Missouri, Newman forced Plaintiff to touch his penis and molested Plaintiff further, including forced mutual masturbation.

40.     Newman continued to sexually abuse Plaintiff regularly through 2009.

42.     The Kanakuk Defendants had a duty to supervise Newman during his employment with Kanakuk.

43.     At all times relevant to this Complaint, Newman was empowered by Kanakuk Defendants to work with minors attending the camp.  Newman was empowered to interact with, mentor, supervise, and provide religious education to youths attending the program.  Newman did so during the time and space limitations of his employment and was motivated, at least in part, to serve Kanakuk Defendants in doing so, including in his mentoring to Plaintiff.

44.     Newman used his position, and the authority and power vested in him by Kanakuk Defendants, to groom and sexually abuse Plaintiff and many other youths attending Kanakuk.

45.     Despite having explicit knowledge of the particular sexual danger Newman posed to Plaintiff prior to the onset of his abuse, Kanakuk Defendants did nothing to supervise Newman's interactions with Plaintiff, nothing to control Newman, and nothing to protect Plaintiff.  They authorized and empowered Newman to perform all duties as a youth pastor and mentor, including

the authority and power to do the following: to provide pastoring, counseling, guidance, mentoring, religious instruction, and physical supervision of Plaintiff and other young adolescent boys in the program; to create and enforce his own rules governing the boys' participation, activities, and experience while attending Kanakuk; and to undertake other duties. They knew, that as part of his duties as Youth Pastor, Newman would be in a position of trust, confidence, and authority over Plaintiff and other boys in the program.

46.     Newman befriended Plaintiff; he gained the trust and confidence of Plaintiff by virtue of the authority vested him by Kanakuk Defendants; and gained the permission and trust of Plaintiff to spend substantial periods of time alone with Plaintiff by virtue of the authority vested in him by Kanakuk Defendants.  They allowed Newman to do so and willingly vested this authority in Newman despite having known or having should have known that he was a continuing sexual danger to boys, and specifically to Plaintiff.

47.     As a result of the authority Kanakuk Defendants vested in Newman to act as youth pastor of Kanakuk, Plaintiff was conditioned to trust Newman, to comply with his directions, and to respect him as a person of authority, including in religious, moral, and ethical matters.  They placed Plaintiff in this situation despite having known or having should have known Newman was a continuing danger to him and other boys.  Using the power, authority and trust of his position at Kanakuk, and availing himself of Kanakuk's representations that he was not only safe but a moral and religious authority figure, Newman induced and directed Plaintiff to engage in various sexual acts with him while Plaintiff was a minor ("the sexual abuse described herein").

## STATUTE OF LIMITATIONS

48.     Plaintiff hereby incorporates by reference all previous paragraphs as if fully set forth herein.

49.     Plaintiff's claims are timely under Arkansas' delayed discovery statute, codified at A.C.A. § 16-56-130,  w h i c h  applies as follows:

a.  Plaintiff was born in 1990.  Plaintiff was abused between 2006 and 2009 while Plaintiff was approximately 15 to 18 years old.  Plaintiff's claims were tolled for minority under A.C.A. § 16-56-116 until Plaintiff reached his 21st birthday, in 2011.

b.  A.C.A. § 16-56-130, a special statute of limitations for victims of childhood sexual abuse commonly referred to as a "delayed discovery statute," was enacted and became effective August 13, 1993.  A.C.A. § 16-56-130 provides a victim of childhood sexual abuse three years to bring suit from when the victim "discovers the *effect* of the injury or condition attributable to the childhood sexual abuse" [emphasis added].  See *Doe v. Cabot, Arkansas School District, et al.*, 2022 WL 242849 (E.D. Ark).

c.  Not until at least 2020, and possibly later, did Plaintiff even begin to discover the effect of the injuries or conditions attributable to the childhood sexual abuse, as described in subsequent paragraphs. Prior to that time, Plaintiff did not discover the effect of the injuries or conditions attributable to the childhood sexual abuse because, unbeknownst to Plaintiff, the very psychological conditions arising from the abuse he suffered prevented that discovery. These conditions include, but are not limited to, anxiety disorder(s), avoidance, denial, depression, post-traumatic stress disorder, self-blame, marital conflict, panic disorder(s), phobias, intimacy struggles, low self-esteem, and psychosexual disorder(s). These conditions are common consequences of child sexual abuse as recognized by the mental health community, and any or all of these conditions commonly prevent victims of child sexual abuse from discovering the effect of the injuries or conditions attributable to the childhood sexual abuse until well into adulthood. One or more of these conditions reasonably prevented Plaintiff from discovering the effect of the injuries or conditions attributable to the childhood sexual abuse.

d.  It was not until at least 2020, and possibly later, after Plaintiff became a father, that he first began to allow himself to reflect on the abuse he suffered and its possible consequences.

e. Plaintiff has only very recently begun the process of learning about those conditions – which may reasonably include, without limitation, anxiety disorder(s), avoidance, denial, depression, post-traumatic stress disorder, self-blame, marital conflict, panic disorder(s), intimacy struggles, phobias, low self-esteem, and psychosexual disorder(s). Prior to very recently, Plaintiff did not discover the effect of the injuries or conditions attributable to the childhood sexual abuse.

f. Plaintiff has sued for claims based on childhood sexual abuse less than three (3) years after discovering the effect of the injuries or conditions attributable to the childhood sexual abuse. Accordingly, Plaintiff's claims are timely under A.C.A. § 16-56-130.

50.    Additionally, Plaintiff's claims are timely under the Justice for Vulnerable Victims of Sexual Abuse Act, codified at Ark. Code Ann. §16-118-118. Pursuant to this newly enacted law, "a cause of action arising before, on, or after July 28, 2021, that was barred or dismissed due to a statute of limitation, is revived, and the civil action may be commenced not earlier than six (6) months after and not later than thirty (30) months after July 28, 2021."

## CAUSES OF ACTION

### COUNT ONE – NEGLIGENT SUPERVISON

51.    Plaintiff hereby incorporates by reference all previous paragraphs as if fully set forth herein.

52.    Kanakuk Defendants wer negligent in supervising Newman. Kanakuk Defendants' negligence was a proximate cause of Plaintiff's damages described in this Complaint. They knew or in the exercise of reasonable care should have known that Newman, during his tenure at Kanakuk, subjected Plaintiff and other boys attending Kanakuk to an unreasonable risk of harm.

53.    Negligent supervision and retention cases hinge on the element of foreseeability of the employee's actions. There is always a duty of reasonable care in the supervision of employees. However, when there is foreseeability, employers have a duty to control an employee for the protection of third parties even where the employee is acting outside the scope of employment.

*Regions Bank & Trust v. Stone County Skilled Nursing Facility, Inc.* 345 Ark. 555, 568, 49 S.W.3d 107, 115 (2001).  Newman's sexual abuse of Plaintiff was foreseeable to Kanakuk Defendants.

54.     In fact, it is "not necessary that the employer foresee the particular injury that occurred, but only that the employer reasonably foresee an appreciable risk of harm to others." *Saine v. Comcast Cable Vision of Arkansas, Inc.*, 354 Ark. 492, 126 S.W.3d 339 (2003).  However, in this case, the particular injury suffered by Plaintiff was specifically foreseeable to Kanakuk Defendants.

55.     Kanakuk Defendants' negligent supervision of Newman was a proximate cause of Plaintiff's injuries because his injuries were the natural and probable consequence of their negligence and ought to have been foreseen in light of attending circumstances existing at the time. See *Regions Bank & Trust v. Stone County Skilled Nursing Facility, Inc.* 345 Ark. 555, 568, 49 S.W.3d 107, 115 (2001).

56.     Here, Kanakuk Defendants knew, or in the exercise of reasonable care should have known, that Newman presented a risk of danger to Plaintiff and other boys.  See *Regions Bank & Trust*, 345 Ark. At 568, 49 S.W.3d at 113.  *See also Saine,* 354 Ark. At 497, 126 S.W.3d at 342.  Despite this, Kanakuk did nothing to control Newman or to protect Plaintiff.  To the contrary, Kanakuk Defendants, upon information and belief, allowed Newman to set his own policies and institute his own rules for how he interacted with the children attending the program.  For all of the reasons described herein, Kanakuk Defendants breached its duty to Plaintiff.

57.     For the reasons described herein, Kanakuk Defendants knew, or in the exercise of reasonable care should have known, that Newman not only presented a risk of danger to Plaintiff but also the exact nature of the particular risk he presented.  ***See* Ex. A.**

58.     Kanakuk Defendants began receiving complaints of sexual misconduct by Newman with minor attendees as early as 1999.  By the time Newman first molested Plaintiff, which occurred on a Kanakuk-sponsored caving trip in Arkansas in 2006, Kanakuk Defendants had received numerous complaints of sexual misconduct by Newman with youths in the program and Kanakuk Defendants were fully aware that Newman was a danger sexually to boys.

59.     Kanakuk Defendants knew without question that Newman was a serial child molester by the time Newman first molested Plaintiff in 2006 while on a caving trip in Arkansas.

60.     Despite this knowledge, Kanakuk Defendants took no action to protect Plaintiff and other children attending the program.  They took no action to restrict Newman's access to his victims.  They chose to do nothing.  Their inaction is directly responsible for Plaintiff's injuries.  They knew or should have known that such inaction would result in the harm suffered by Plaintiff, which it did.

61.     Kanakuk Defendants, as described herein, concealed from minor attendees and their parents their knowledge that Newman was a sexual predator who was using the position of trust they put him in to sexually abuse boys.  They misrepresented to parents that their children were safe around Newman when, in fact, young males were at an unreasonably heightened risk of sexual abuse by Newman, a risk of which Kanakuk Defendants were aware, but attendees and parents were not.

62.     Kanakuk Defendants systematically ignored these notices of Newman's danger to children prior to and during his sexual abuse of Plaintiff.  They chose not to investigate the numerous allegations, discipline Newman, restrict Newman's duties, increase monitoring or supervision of Newman, report Newman to law enforcement, terminate Newman, or otherwise

take reasonable steps to intervene and protect Newman and other children from the danger posed by Newman.

63.     Given the multiple, specific reports made directly to Kanakuk Defendants, and other information readily available to it, they knew or should have known about Newman's repeated inappropriate behavior and the danger of sexual abuse he posed towards children in the program. However, despite this knowledge, they continuously and systematically ignored such reports and notices.  They minimized and downplayed the harm of sexual abuse to young teenage boys; failed to reach out to provide support and assistance to boys it knew were likely being sexually abused by Newman, including Plaintiff; and repeatedly downplayed its historical knowledge of the nature and extent of harm it knowingly allowed Newman to cause.

64.     For all of the reasons described herein, Kanakuk Defendants breached their duty to Plaintiff.  As a direct result of their negligent supervision of Newman, Plaintiff has suffered injuries and damages in excess of the amount required for federal diversity jurisdiction.

## COUNT TWO: NEGLIGENT RETENTION

65.     Plaintiff hereby incorporates by reference all previous paragraphs as if fully set forth herein.

66.     Kanakuk Defendants were negligent in their retention of Newman as their agent. Their negligence was a proximate cause of Plaintiff's damages described in this Complaint. They knew, or in the exercise of reasonable care should have known, that Newman, during his tenure as youth pastor and agent of Defendants, subjected Plaintiff and other young adolescent boys attending the program, to an unreasonable risk of harm.

67.     For the reasons described throughout this Complaint, Kanakuk Defendants' decision to retain Newman for as long as they did, despite their knowledge of the danger he posed

to children and to Plaintiff particularly, was negligent and a proximate cause of Plaintiff's damages.

## COUNT THREE: NEGLIGENCE

68.    Plaintiff hereby incorporates by reference all previous paragraphs as if fully set forth herein.

69.    Kanakuk Defendants owed a duty of care to Plaintiff, as described herein.

70.    This duty included a duty to supervise Plaintiff.

71.    At all relevant times hereto, Kanakuk and its agents were required to consider Plaintiff's capacity to care for himself to protect him from foreseeable dangers created by his condition as minor.

72.    At all relevant times hereto, Kanakuk Defendants owed a duty of ordinary care to the children in program, including Plaintiff.

73.    At all relevant times hereto, it was within the scope of Kanakuk Defendants' professional services to provide a safe environment for the youths attending its programs.

74.    At all relevant times hereto, Kanakuk Defendants had a duty to protect the children in its program against foreseeable harm.

75.    At all relevant times hereto, Kanakuk Defendants and their agents had a duty to furnish the care and attention reasonably required by the children attending its program.

76.    Kanakuk Defendants breached their duties to Plaintiff.

77.    Kanakuk Defendants' breach of its duties was a proximate cause of Plaintiff's injuries.

78.     The harm suffered by Plaintiff was foreseeable to Kanakuk Defendants, and they knew or should have known that Newman presented an unreasonable risk of harm to Plaintiff and other minors.

79.     At all relevant times hereto, Kanakuk Defendants, as well as its pastors and agents, had statutory and common law duties to monitor the welfare of the children in its ministry program and to report any suspected abuse or neglect of such children to authorities.

80.     At all relevant times hereto, Kanakuk Defendants' pastors and agents were mandated reporters.

81.     At all relevant times hereto, Kanakuk Defendants' administrators and directors were mandated reporters.

82.     Kanakuk and its agents failed to report reasonable suspicions of child maltreatment.

83.     Kanakuk Defendants failed to establish clear boundaries and codes of conduct to be observed by pastors and other staff when interacting with minors.

84.     Kanakuk Defendants failed to put in place policies and protocols to keep children in the program safe from sexual predation.

85.     Kanakuk Defendants failed to warn attendees and their children of the known danger.

86.     In addition to knowingly exposing children to a child sexual predator, Kanakuk Defendants failed to inform, educate, or train its staff in how to identify, prevent or respond to incidents of child sexual abuse; warn boys in their programs (or their parents) about this known danger; implement reasonable and feasible child abuse prevention policies; alert authorities to the nature and scope of this known danger, as required by law; investigate any reports of Newman's misconduct; supervise the children participating in the program; or fire, discipline, or remove

Newman or otherwise prevent him from accessing Plaintiff.  As a result, Newman sexually abused Plaintiff and many other children.

87.     For all of the reasons described herein, Kanakuk Defendants breached their duty to Plaintiff.  As a direct result of their negligence, Plaintiff has suffered injuries and damages in excess of the amount required for federal diversity jurisdiction.

### COUNT FOUR: SEXUAL BATTERY (VICARIOUS LIABILITY)

88.     Plaintiff hereby incorporates by reference all previous paragraphs as if fully set forth herein.

89.     Newman wrongfully, intentionally, and by force made harmful physical sexual contact with Plaintiff, a minor child, without legal consent.

90.     Newman was acting within the scope of his employment and authority, and for the benefit of Kanakuk Defendants, and wielding the power they bestowed on him when he sexually abused Plaintiff.

91.     In the first alternative, acts within the course and scope of Newman's employment led to or resulted in the sexual abuse.

92.     In the second alternative, Newman's sexual abuse of Plaintiff was aided by his agency for Kanakuk Defendants.

93.     In the third alternative, Kanakuk Defendants ratified Newman's sexually abusive conduct towards Plaintiff and other children when it chose to retain him.

94.     In the fourth alternative, Newman's tortious conduct, ostensibly, was committed in furtherance of Kanakuk Defendants' goals.

95.     The battery was a proximate cause of Plaintiff's injuries.

96.     As a direct result of the battery, Plaintiff has suffered injuries and damages in excess of the amount required for federal diversity jurisdiction.

## COUNT FIVE: TORT OF OUTRAGE

97.     Plaintiff hereby incorporates by reference all previous paragraphs as if fully set forth herein.

98.     Kanakuk Defendants willfully and wantonly engaged in extreme and outrageous conduct.

99.     Kanakuk Defendants' conduct, as described herein, proximately caused the injuries to Plaintiff described herein.

100.    Kanakuk Defendants betrayed the trust of Plaintiff and the community in the most egregious manner, given the amount of evidence of danger posed by Newman that it systematically ignored for an unreasonably long period of time prior to the onset of Plaintiff's abuse in 2006. Their conduct was extreme, outrageous, and utterly intolerable in a civilized community. Their conduct went beyond all possible bounds of decency.

## COUNT SIX: VICARIOUS LIABILITY FOR NEGLIGENT OR OTHERWISE TORTIOUS ACTS AND OMISSIONS OF ALL AGENTS AND EMPLOYEES

101.    Plaintiff hereby incorporates by reference all previous paragraphs as if fully set forth herein.

102.    Kanakuk Defendants are vicariously liable for all acts and omissions of its agents and employees, including those as of yet unknown agents and employees, as described throughout this Complaint.

103.    As described herein, their agents, employees, and representatives were all acting within the scope of their authority and employment when these breaches of duty occurred.

## DAMAGES

104.   Plaintiff hereby incorporates by reference all previous paragraphs as if fully set forth herein.

105.   As a direct result of Kanakuk Defendants' conduct described herein, Plaintiff has suffered childhood sexual abuse and resulting injuries, conditions, and damages as follows:

a.   Plaintiff has suffered and will continue to suffer great pain of mind and body;

b.   Severe and permanent emotional distress and mental anguish;

c.   Physical manifestations of emotional distress;

d.   Embarrassment;

e.   Loss of self-esteem;

f.   Humiliation;

g.   Shame; and

h.   Psychological injuries, including anxiety disorder(s), avoidance, denial, depression, post-traumatic stress disorder, self-blame, marital conflict, panic disorder(s), intimacy struggles, phobias, low self-esteem, and psychosexual disorder(s).

106.   Plaintiff was prevented and will continue to be prevented from performing his normal daily activities and obtaining the full enjoyment of life; he will incur expenses for medical and psychological treatment, therapy, and counseling.

**AMOUNT OF DAMAGES**

107.   Plaintiff hereby incorporates by reference all previous paragraphs as if fully set forth herein.

108.   Plaintiff's injuries and damages are in excess of the minimum amount required for federal court jurisdiction in diversity of citizenship cases, for which Plaintiff should be awarded a

judgment as against Defendants in an amount to fully and fairly compensate him for each and every element of damages that has been suffered.

## PUNITIVE DAMAGES

109.   Plaintiff hereby incorporates by reference all previous paragraphs as if fully set forth herein.

110.   Kanakuk Defendants knew that Newman presented an unreasonably high risk of sexual abuse to children.  As described with particularity herein, Kanakuk Defendants and their agents knew without a doubt that Newman posed a sexual danger to children in the program, and they knew this for an unreasonably long period of time prior to the beginning of Plaintiff's abuse. They knew that their systematic refusal to take steps to protect children receiving ministerial and other services by Newman would almost certainly result in the sexual abuse of minors such as Plaintiff.  Therefore, their conduct can only be described as willful and wanton, and in reckless disregard of the consequences.  They displayed a conscious indifference to the rights, safety, and welfare of Plaintiff, and of every other child who attended the program during the time of Newman's agency.

111.   Kanakuk Defendants betrayed the trust of Plaintiff and the community in the most egregious manner, given the amount of evidence of the danger posed by Newman that it systematically ignored for an unreasonably long period of time.  Their conduct was extreme, outrageous, and utterly intolerable in a civilized community. Their conduct went beyond all possible bounds of decency.

112.  Defendants had every reason to believe Newman would sexually abuse Plaintiff, and they quite simply chose to let it happen rather than expose the business to bad publicity that might come with reporting Newman to law enforcement.

113.    Plaintiff is seeking punitive damages to punish Kanakuk Defendants, and to deter them and others from engaging in this conduct.

## JURY DEMAND

114.    Plaintiff respectfully demands a trial by jury.

## RESERVATION OF ADDITIONAL CLAIMS

115.    Plaintiff reserves the right to plead further upon completion of discovery to state additional claims and to name additional parties to this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, by and through his undersigned attorney, Joshua D. Gillispie of Green & Gillispie, and Laffey Bucci & Kent (pro hac vice applications forthcoming), requests recovery for all damages previously pled herein, and for compensatory damages for the reasons previously pled and in an amount previously prayed for and/or allowed by common law or by statute, in an amount left to the sound discretion of the jury, but in an amount necessary to satisfy the jurisdictional limits of this Court or any other Court, unless said damages are set, in whole or in part, by statute, for punitive damages, for his attorneys' fees and all costs herein expended, and for all other relief to which Plaintiff is justifiably entitled.

Respectfully submitted,

/s/ Joshua Gillispie
Joshua D. Gillispie, Bar No. 2010131
**Green & Gillispie**
1 Riverfront Place, Suite 605
North Little Rock, AR 72114
Phone: (501) 244-0700
Fax: (501) 244-2020
Email: josh@greenandgillispie.com